KEKER & VAN NEST, LLP
JEFFREY R. CHANIN - #103649
DANIEL PURCELL - #191424
DAN JACKSON - #216091
KHARI J. TILLERY - #215669
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:  (415) 391-5400
Facsimile:  (415) 397-7188
Emails: jchanin@kvn.com; dpurcell@kvn.com; djackson@kvn.com; ktillery@kvn.com

LAW OFFICES OF ANDREW L. PACKARD
ANDREW L. PACKARD - #168690
294 Page Street
San Francisco, CA  94102
Telephone:  (415) 431-2970
Facsimile:  (415) 431-0410
Email: packardal@mindspring.com

Attorneys for Plaintiffs
WATERKEEPERS NORTHERN CALIFORNIA
and BILL JENNINGS

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| WATERKEEPERS NORTHERN CALIFORNIA, a non-profit corporation dba BAYKEEPER; and BILL JENNINGS, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>AG INDUSTRIAL MANUFACTURING, INC., a corporation; and CLAUDE E. BROWN, an individual,<br><br>Defendants. | Case No. 2:00-cv-1967-MCE-PAN<br><br>**CONSENT DECREE** |

PDF created with pdfFactory trial version www.pdffactory.com

**WHEREAS**, plaintiff BayKeeper (hereinafter, "BAYKEEPER"), formerly WaterKeepers Northern California, is a non-profit corporation dedicated to the preservation, protection, and defense of the environment, the wildlife, and the natural resources of the San Francisco Bay and the Delta estuary;

**WHEREAS**, plaintiff WILLIAM JENNINGS (hereinafter, "JENNINGS") was formerly the Director and a member of the DeltaKeeper Chapter of BAYKEEPER;

**WHEREAS**, plaintiffs BAYKEEPER and JENNINGS shall be collectively referred to hereinafter as "PLAINTIFFS";

**WHEREAS**, defendant AG INDUSTRIAL MANUFACTURING, INC. (hereinafter, "AIM") is a corporation organized under the laws of the State of California engaged in the manufacture and fabrication of agricultural machinery and equipment at 110 South Beckman Road, Lodi, San Joaquin County, California (hereinafter, "the Facility");

**WHEREAS**, defendant Claude E. Brown (hereinafter, "BROWN") is the Chief Executive Officer and fifty-percent shareholder of AIM;

**WHEREAS**, defendants AIM and BROWN shall be collectively referred to hereinafter as "DEFENDANTS";

**WHEREAS**, non-party Paul Burkner is the remaining fifty-percent shareholder of AIM and its Vice President;

**WHEREAS**, the discharge of "storm water associated with industrial activity" (as defined in General Permit No. CAS000001, Attachment 4, Definition 9, hereinafter referred to as "Storm Water") is regulated pursuant to the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 91-13-DWQ (as amended by Water Quality Order 92-12 DWQ and 97-03-DWQ), issued pursuant to Section 402 of the Federal Water Pollution Control Act, 33 U.S.C. § 1342 (hereinafter "General Permit");

**WHEREAS**, on June 28, 2000, BAYKEEPER served AIM and BAYKEEPER represents that it has also served the United States Attorney General, the national and Region IX offices of the United States Environmental Protection Agency, the State Water Resources

366988.02

1

PDF created with pdfFactory trial version www.pdffactory.com

Control Board, the Regional Water Quality Control Board - Central Valley Region, the San Joaquin County District Attorney, and the Lodi City Attorney with a Notice of Violation and Intent to File Suit ("60-Day Notice") under Sections 505(a)(1) and (f) of the Federal Water Pollution Control Act (the "Act" or "Clean Water Act"), 33 U.S.C. § 1365(a)(1) and (f);

**WHEREAS**, the 60-Day Notice alleged that AIM had violated and continued to violate Sections 301(a) and 402(p) of the Clean Water Act, 33 U.S.C. § 1311(a) and 1342(p), due to the Facility's discharges of Storm Water containing pollutants and discharges of non-Storm Water to the Mokelumne River and ultimately into the Delta in violation of the effluent limits, permit conditions, and reporting and monitoring requirements of the General Permit;

**WHEREAS**, on September 12, 2000, PLAINTIFFS filed a complaint against DEFENDANTS in the United States District Court for the Eastern District of California entitled WaterKeepers Northern California, et al. v. AG Industrial Manufacturing, et al., Case No. CIV. S-00-1967 MCE PAN (hereinafter, "Complaint" or "Action");

**WHEREAS**, AIM disputed the allegations set forth in the 60-Day Notice and Complaint but immediately began efforts to comply with the General Permit and the Act by: (1) filing a Notice of Intent To Comply with the General Permit in July 2000; (2) hiring a storm water consultant to assist in the development of a Storm Water Pollution Prevention Plan (hereinafter, "SWPPP") and a Monitoring & Reporting Program in August 2000; (3) installing a three-stage Jensen Storm Water Interceptor at the Facility in October 2000; (4) later, over time, constructing a series of berms to better control and direct storm water flows at the Facility in general; (5) developing and implementing non-structural Best Management Practices; and (6) developing a record keeping process to assist in the continuous re-evaluation of all of AIM's storm water compliance efforts by BROWN;

**WHEREAS**, AIM represents that it has, consistent with its General Permit sampling frequency obligations, attempted to collect at least two storm water samples during each of the past five Wet Seasons (reporting periods ending June 30, 2001-2005) and provided all storm water sample results to the Regional Board with its Annual Reports;

///

PDF created with pdfFactory trial version www.pdffactory.com

1  **WHEREAS**, DEFENDANTS contend that they have not been in material violation of
2  the General Permit or the Act since filing their Notice of Intent To Comply with the General
3  Permit and adopting their initial SWPPP;

4  **WHEREAS**, PLAINTIFFS and DEFENDANTS (hereinafter, the "SETTLING
5  PARTIES") filed cross-motions for summary judgment and evidentiary objections (including
6  PLAINTIFFS' Motion to Strike the Declaration of DEFENDANTS' chief expert) beginning in
7  March 2002; PLAINTIFFS' Motion sought the imposition of a civil penalty against the
8  DEFENDANTS in excess of $5,000,000.00;

9  **WHEREAS**, on November 25, 2002 the Court issued a Minute Order notifying the
10 parties that the cross-motions were submitted without oral argument pursuant to Local Rule 28-
11 230(h).  By order of December 3, 2002, the Court granted DEFENDANTS' Motion for
12 Summary Judgment, solely on jurisdictional grounds, finding that PLAINTIFFS' 60-Day Notice
13 of Violation failed to satisfy the notice requirements of the Clean Water Act; the Court expressly
14 declined to rule on the merits of PLAINTIFFS' motion, the evidentiary objection raised, or
15 PLAINTIFFS' Motion to Strike the Declaration of DEFENDANTS' chief expert);

16 **WHEREAS**, PLAINTIFFS appealed the December 3, 2002 Order, and on July 16, 2004
17 the Ninth Circuit Court of Appeals reversed, finding that PLAINTIFFS' 60-Day Notice of
18 Violation fully satisfied the notice requirements of the Clean Water Act and that BAYKEEPER's
19 Notice of Violation notice was sufficient to permit AIM to identify the dates on which
20 BAYKEEPER alleged that AIM violated the Act under 33 U.S.C. § 1365(b)(1)(A) and 40 C.F.R
21 § 135.3(a);

22 **WHEREAS**, AIM filed a Petition for Writ of Certiorari to the United States Supreme
23 Court (No. 04-468), which was denied;

24 **WHEREAS**, upon remittitur, the parties again brought on for hearing previously filed
25 cross-motions for summary judgment, evidentiary objections, and a motion to strike, which
26 motions were heard on May 16, 2005;

27 **WHEREAS**, on August 19, 2005, the Court issued an order denying PLAINTIFFS'
28 motion for summary judgment, granting DEFENDANTS' motion for summary adjudication that

366988.02

PDF created with pdfFactory trial version www.pdffactory.com

no proof of unauthorized non-storm water discharge existed and granting, in part, and denying, in part, DEFENDANTS' remaining motion for summary adjudication;

**WHEREAS**, the SETTLING PARTIES have agreed that it is in the parties' mutual interest to avoid the costs of further litigation in this matter and to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings;

**WHEREAS**, this Consent Decree was served on the United States Department of Justice and the national and Region IX offices of the United States Environmental Protection Agency for the statutory review period pursuant to 33 U.S.C. § 1365(c); and,

**WHEREAS**, all actions taken by AIM pursuant to this Consent Decree shall be taken in compliance with all applicable federal, state, and local rules and regulations;

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1. Pursuant to Rule 41 of the Federal Rules of Civil Procedure, the SETTLING PARTIES hereby agree that this action shall be dismissed with prejudice upon the following stipulations and conditions.

2. The Court has jurisdiction over the subject matter of this action and over the parties consenting hereto pursuant to Section 505(a)(1)(A) of the Act, 33 U.S.C.§ 1365(a)(1)(A).

3. Venue is appropriate in the Eastern District pursuant to Section 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations have taken place is located within this District.

4. The Complaint states claim(s) upon which relief may be granted against AIM pursuant to Section 505 of the Act, 33 U.S.C. § 1365.

5. PLAINTIFFS have standing to bring this Action.

### COMMITMENTS OF DEFENDANTS

6. **Full compliance with the requirements of the General Permit and the Clean Water Act.** This decree shall remain in effect through June 30, 2007. During the approximately

///

18-month duration of this Consent Decree, AIM agrees to maintain the Facility in full compliance with the requirements of the General Permit.

7.  AIM agrees that the Facility's Storm Water discharges and authorized non-Storm Water discharges (1) shall not "cause or threaten to cause pollution, contamination, or nuisance" within the meaning of the General Permit; (2) shall not "adversely impact human health or the environment" within the meaning of the General Permit; and (3) shall not "cause or contribute to the exceedance of any applicable water quality standard contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan" within the meaning of the General Permit.

8.  **Continuing Implementation Of Current Storm Water Pollution Prevention Plan ("SWPPP").**  AIM agrees, for the life of this decree, to continue to implement its current SWPPP for the Facility (attached hereto as Exhibit "A"), incorporating such site improvements and Best Management Practices ("BMPs") as necessary to comply with the General Permit and the Act.  This Consent Decree does not constitute an acknowledgement or admission on the part of BAYKEEPER that AIM's current SWPPP complies with the General Permit and does not constitute agreement with any particular term of the SWPPP.  Likewise any failure on the part of BAYKEEPER to object to any future version of the SWPPP shall not constitute an acknowledgement or admission on the part of BAYKEEPER that such SWPPP complies with the General Permit and shall not constitute agreement with any particular term of such SWPPP.

9.  **Site Conditions and Best Management Practices.**  AIM agrees, for the life of this decree, to maintain its current structural BMPs, including, but not limited to, the Facility's storm water interceptor and drainage system and all associated berms directing storm water flows at the Facility, and to continue to incorporate structural and non-structural BMPs into its SWPPP as is necessary to comply with the General Permit and the Act

10.  **Continuing Implementation Of Storm Water Monitoring & Reporting Program ("M&RP") for the Facility.**  AIM agrees, for the life of this decree, to continue to implement its current Monitoring and Reporting Program ("M&RP"), including, but not limited to, all required visual observations of Storm Water discharges from the Facility.  The M&RP

PDF created with pdfFactory trial version www.pdffactory.com

shall continue to provide a rationale and description of the visual observation methods, location and frequency, the sampling methods, and the analytical methods and corresponding method detection limits used to detect pollutants in Storm Water discharges. This Consent Decree does not constitute an acknowledgement or admission on the part of BAYKEEPER that AIM's M&RP complies with the General Permit and does not constitute agreement with any particular term of the M&RP. Likewise any failure on the part of BAYKEEPER to object to any future version of the M&RP shall not constitute an acknowledgement or admission on the part of BAYKEEPER that such M&RP complies with the General Permit and shall not constitute agreement with any particular term of the M&RP.

11. Nothing herein shall abrogate AIM's responsibility and authority to modify its SWPPP or M&RP as required by section C. 11. of the General Permit or modify the Reporting Requirements imposed upon AIM in Section C.11 of the General Permit.

12. **Storm Water Sampling By AIM.** AIM agrees to collect and analyze a minimum of two storm water samples (no more than one sample from each storm event) from the discharge point at the Facility's Storm Water Interceptor during each of the 2005-2006 and 2006-2007 Wet Seasons under the terms and conditions required by General Permit. AIM further agrees to collect a voluntary third sample during each of the 2005-2006 and 2006-2007 Wet Seasons, which may be collected at anytime during AIM's normal business hours as soon as possible after it has started to rain.

13. **Parameters/Target Levels.** It is the mutual goal of the SETTLING PARTIES, in entering into this Consent Decree to ensure that the Facility's Storm Water discharges and authorized non-Storm Water discharges (1) shall not "cause or threaten to cause pollution, contamination, or nuisance" within the meaning of the General Permit; (2) shall not "adversely impact human health or the environment" within the meaning of the General Permit; and (3) shall not "cause or contribute to the exceedence of any applicable water quality standard contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan" within the meaning of the General Permit.

///

PDF created with pdfFactory trial version www.pdffactory.com

14. **Ongoing Employee Education.** AIM shall conduct regular training sessions to educate its employees about their respective roles in implementing the various measures required by the General Permit, SWPPP, and this Consent Decree.

### FEES, COSTS AND EXPENSES

15. To help defray BAYKEEPER' investigative, consultant, expert and attorneys' fees and costs incurred as a result of investigating, bringing this matter to AIM' attention, litigating, and negotiating a settlement in the public interest, AIM agrees to partially reimburse BAYKEEPER in the amount of $50,000. Payment shall be made in the form of a check payable to The Attorney-Client Trust Account of the Law Offices of Andrew Packard within five (5) calendar days of final approval and entry of this Consent Decree by the Clerk of the Court.

### RETENTION OF JURISDICTION AND TERMINATION

16. This Court shall retain jurisdiction in this matter from the date of entry of the Decree through the date of its termination, for the purposes of enforcing the terms of this Consent Decree. In addition, following the date of termination of this Decree, this Court shall retain jurisdiction for the purpose of disposing of any motion to enforce this Decree, or any contempt petition filed on or before the date of termination of this Decree.

17. This Consent Decree shall terminate as to each of its provisions on the earlier of June 30, 2007, or two months after AIM is no longer conducting any operations at the Facility, all "Significant Materials," as defined in the General Permit, from the Facility's operations have been removed from the Facility, and the obligations set forth herein have been fulfilled. In the event that there are any unresolved matters concerning compliance with the terms of this Consent Decree at the time of its termination, the Court shall retain jurisdiction to assist the parties in resolving such matters.

18. In any proceeding to enforce the terms of this Consent Decree the substantially prevailing party, the costs of litigation (including reasonable attorney and expert witness fees) may be awarded in accordance with the terms of 33 U.S.C. §1365(d).

### NO ADMISSION OR FINDING

19. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall

7

366988.02

PDF created with pdfFactory trial version www.pdffactory.com

constitute or be construed as a finding, adjudication or acknowledgment of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule or regulation.

**RELEASE OF LIABILITY**

20. Upon entry of this Consent Decree, PLAINTIFFS hereby release AIM, its successors and assigns, shareholders, partners, officers, directors, employees, agents, Board Members, and attorneys (including, but not limited to Paul Burkner), and BROWN, from all claims for damages, civil penalties, attorneys' fees and costs or any other relief asserted by PLAINTIFFS in the above-entitled Action, pertaining to violations of the General Permit taking place on or before June 30, 2005.

21. Upon entry of this Consent Decree, DEFENDANTS hereby release BAYKEEPER, its successors and assigns, shareholders, partners, officers, directors, employees, agents, Board Members, and attorneys, and JENNINGS from all claims which arise from or pertain to this Action and its resolution.

22. PLAINTIFFS, acting as individuals and not on behalf of the general public, covenant not to sue AIM, its successors and assigns, shareholders, partners, officers, directors, employees, agents, Board Members and attorneys (including, but not limited to Paul Burkner), or BROWN for violations of California Health and Safety Code Section 25249.5 et seq. taking place on or before June 30, 2005.

**GENERAL PROVISIONS**

23. **Construction.** The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the General Permit or the Act.

24. **Confidentiality.** For a period of four months following final Court and Governmental Agency approval of the settlement agreement, the parties agree not to make any public comments about the terms of settlement, except to refer the inquirer to the express terms of the agreement and/or to say that the matter has been settled to the mutual satisfaction of the parties. Further, all confidential documents and/or information produced by DEFENDANTS in discovery, including, but not limited to, business records, financial information, and photographs

PDF created with pdfFactory trial version www.pdffactory.com

and video obtained during formal site inspections of the Facility shall remain confidential while this Consent Decree remains in effect.  If PLAINTIFFS' or their counsel wish to disclose these documents and/or information to a third-party, DEFENDANTS shall be provided with reasonable notice and an opportunity to object to the disclosure.  Upon termination of this Consent Decree, PLAINTIFFS shall either destroy said confidential documents and/or information or return them to DEFENDANTS.

25. **Severability.**  In the event that any provision, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

26. **Correspondence.**  All notices required herein or any other correspondence pertaining to this decree shall be sent by regular or certified mail as follows:

If to BAYKEEPER:

Mr. Leo O'Brien
Executive Director, BAYKEEPER
785 Market St., Suite 850
San Francisco, CA  94103

And to:

Andrew L. Packard, Esq.
Law Offices of Andrew L. Packard
294 Page Street
San Francisco, CA 94102

If to AIM:

ATTN: Mr. Claude E. Brown, President
AG Industrial Manufacturing, Inc.
110 S. Beckman Rd.
Lodi, CA 95240

And to:

Dennis M. Hauser, Esq.
Hauser & Mouzes
18826 N. Lower Sacramento Road, Suite H
P.O. Box 1397
Woodbridge, CA  95258-1397

9

366988.02

PDF created with pdfFactory trial version www.pdffactory.com

1    Any change of address or addresses shall be communicated in the manner described
2 above for giving notices.
3    27.  **Full Settlement.**  The parties intend this Consent Decree to be the entire
4 agreement of the parties, and are not relying upon any representations or agreements of the
5 parties not explicitly set forth herein.
6    28.  **Authority.**  The undersigned representatives for SETTLING PARTIES each
7 certify that he/she is fully authorized by the party whom he/she represents to enter into the terms
8 and conditions of this Consent Decree.
9    29.  The SETTLING PARTIES hereto enter into this Consent Decree, Order and Final
10 Judgment and submit it to the court for its approval and entry as a final judgment.

12 Dated:                                              AG INDUSTRIAL MANUFACTURING,
                                                      INC., AND CLAUDE BROWN

                                                      By: _____
                                                      Claude E. Brown, President

16 Dated:                                              BAYKEEPER

                                                      By: _____
                                                      Leo O'Brien, Executive Director

20 Dated:                                              WILLIAM JENNINGS

                                                      By: _____
                                                      William Jennings

366988.02

PDF created with pdfFactory trial version www.pdffactory.com

**APPROVED AND SO ORDERED:**

Pursuant to 33 U.S.C. § 1365(c), this Consent Decree, which was filed with the Court and served on the United States Department of Justice (DOJ) and the national and Region IX offices of the United States Environmental Protection Agency (EPA) on March 1, 2006, shall be entered by the Clerk of the Court on **April 17, 2006**, if no objections have been filed and served by the DOJ and/or the EPA.  If the DOJ and/or the EPA do file and serve objections to the Consent Decree before April 17, 2006, the Court will set a Case Management Conference to determine how best to proceed.

Dated: March 7, 2006

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

366988.02

PDF created with pdfFactory trial version www.pdffactory.com